**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. ____________________**

**MELANIE M. BERES,**
Plaintiff, pro se,

v.

**KATY D. REDFIELD-MARINO, APRN, NP,**
also known as Katy Redfield,
Defendant.

**PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY, AND EQUITABLE RELIEF**

FILED BY PC D.C.
SEP 22 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

# PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY, AND EQUITABLE RELIEF

## NATURE OF THE ACTION

1. This diversity action concerns alleged independent tortious and equitable misconduct arising from a long-standing confidential provider relationship beginning in approximately October 2018 and continuing through 2024 as relevant to the events at issue. Plaintiff alleges that Defendant acquired extensive knowledge of Plaintiff's disability or vulnerability, family crisis, and requests for protection; personally interacted with Plaintiff's children; undertook to assist with protective and family interventions; executed a sworn remote-online-notarized affidavit concerning Plaintiff and her family; later repudiated that affidavit to Plaintiff's former husband after he allegedly threatened legal action based on an asserted HIPAA theory; withdrew from the relationship after Plaintiff relied on Defendant's involvement; and withheld or delayed records requested by Plaintiff and the Social Security Administration while an account balance remained outstanding.

2. This is not pleaded as a medical-negligence or medical-malpractice action. Plaintiff does not ask the Court to decide whether Defendant's diagnosis, ketamine treatment, dosage,

medication management, or other medical treatment satisfied a professional medical standard of care. Plaintiff's claims instead concern failure to protect through alleged voluntary undertakings and reliance, fiduciary and confidential duties, records access, the alleged repudiation of Defendant's own notarized affidavit, and related declaratory and equitable relief.

3. Plaintiff's central factual theory is failure to protect Plaintiff and her children through Defendant's own undertakings and conduct. Plaintiff alleges Defendant knew Plaintiff was a disabled or otherwise highly vulnerable woman in a severe family crisis; knew Plaintiff was seeking intervention and protection for herself and her children; personally obtained information from family members including Killian; possessed child-protection and pediatric-trauma experience; undertook to assist in specific ways; and then failed to complete those undertakings or meaningfully redirect Plaintiff to other protective resources. Plaintiff alleges concrete reliance and resulting harm from those undertakings, rather than liability merely because Defendant did not solve the family's problems.

4. This Complaint is intended to satisfy Fed. R. Civ. P. 8(a) and 10(b) by stating a short and plain jurisdictional basis, separate numbered factual allegations, distinct causes of action, and a demand for relief. To the extent any allegation sounds in fraud, Plaintiff pleads the circumstances with particularity consistent with Fed. R. Civ. P. 9(b), including the speaker, recipient, approximate time, substance, and alleged consequence.

## I. JURISDICTION AND VENUE

5. Plaintiff Melanie M. Beres is a citizen of Wisconsin. Defendant Katy D. Redfield-Marino, APRN, NP, also known as Katy Redfield, is alleged to be a citizen of Florida and to reside in Palm Beach County, Florida.

6. The amount in controversy exceeds $75,000, exclusive of interest and costs, based on the compensatory and other relief claimed in good faith. This Court therefore has original diversity jurisdiction under 28 U.S.C. § 1332(a).

7. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides a remedy for an actual controversy otherwise within this Court's jurisdiction. Plaintiff seeks a declaration concerning Defendant's authorship and execution of the February 16, 2023 affidavit.

8. Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because Defendant is alleged to reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in Palm Beach County, Florida.

9. Personal jurisdiction is proper because Defendant is alleged to reside and practice in Florida and because the material conduct at issue occurred substantially in Florida.

## II. PARTIES

10. Plaintiff Melanie M. Beres is a natural person and Wisconsin citizen who, during the relevant period, received services from Defendant and disclosed sensitive health, family, legal, and household information to Defendant in circumstances of trust and confidence.

11. Defendant Katy D. Redfield-Marino, APRN, NP, also known as Katy Redfield, is alleged to be a Florida-licensed advanced practice registered nurse/nurse practitioner who provided services to Plaintiff for years and thereby acquired detailed knowledge of Plaintiff's health, disability or vulnerability, family, children, litigation, and household circumstances.

12. Defendant's February 16, 2023 affidavit states that she held a bachelor's degree in nursing and a master's degree as a Family Nurse Practitioner, had worked in pediatric and trauma settings, received specialized training in pediatric trauma and intensive care, worked at All Children's Hospital, and was a member of the Child Protection Team of Palm Beach County. Plaintiff alleges these facts are relevant to Defendant's knowledge of family-safety concerns, awareness of protective resources, and the reasonableness of Plaintiff's reliance on Defendant's guidance.

## III. FACTUAL ALLEGATIONS

13. Plaintiff first spoke with Defendant by telephone in approximately October 2018 and thereafter attended an in-person appointment. From approximately October 2018 through 2024, as relevant to the parties' continuing dealings, Defendant provided ketamine-based and holistic wellness services and became a trusted professional confidante.

14. During the relationship, Plaintiff repeatedly disclosed serious family conflict involving her separation and divorce from Scott Allen Peterson, household arguments, alleged alienation between Plaintiff and her children, and Plaintiff's concern that the escalating conflict was harming her and her family.

15. During the same confidential relationship, Plaintiff alleges Defendant made recorded statements expressing distrust of the judicial system, including statements in substance that judges were "out to harm" Plaintiff and that the court system was a "circus" taking Plaintiff's money. Plaintiff does not plead those opinions as an independent tort or as proof that any judge acted improperly. Plaintiff alleges them only to show the scope of the relationship, Defendant's

influence over Plaintiff's decisions about courts and outside assistance, the degree of trust Plaintiff placed in Defendant, and the foreseeability of Plaintiff's reliance on Defendant's later guidance.

16. Plaintiff alleges that her son, Chesczio 'Ches' Jack Peterson, was approximately sixteen to seventeen years old during material portions of this period. Plaintiff told Defendant that Ches was not meaningfully attending or completing high school and that Plaintiff feared the household conflict, educational disconnection, and alienation would impair his future and damage Plaintiff's relationship with him.

17. Plaintiff sought outside assistance not merely to accuse or punish Scott. Plaintiff alleges that she wanted a neutral agency or youth/family resource to speak with the household, reduce conflict, protect her relationship with Ches, and help Ches locate a structured educational, vocational, college-preparatory, residential, or comparable program that could provide distance from the parental conflict and a path toward education and independence.

18. Plaintiff alleges that she discussed contacting the Florida Department of Children and Families (DCF) or another appropriate resource and that Defendant told Plaintiff not to call DCF. Plaintiff alleges that she relied on that advice because Defendant had become a trusted professional confidante.

19. Because Defendant allegedly told Plaintiff not to call DCF, Plaintiff alleges that she did not call DCF at that time and instead relied on Defendant's promised intervention, guidance, and ability to direct the family toward appropriate resources.

20. Plaintiff alleges that Defendant did not meaningfully redirect Plaintiff to a youth-service agency, family-support program, school intervention resource, social-service agency, or other appropriate entity despite Plaintiff's express request for assistance concerning her minor son and the deteriorating household.

21. Plaintiff does not allege that school nonattendance or household disagreement, standing alone, automatically constituted child abuse. Plaintiff alleges those circumstances as part of what Defendant knew and as context for Plaintiff's requests for protection, referral, and intervention.

22. Plaintiff also repeatedly discussed her adult daughter, Killian, with Defendant. Defendant personally met Killian. Plaintiff alleges Defendant spoke directly with Killian about Scott, the household, family conflict, Killian's health, severe pain associated with PCOS,

multiple prescription medications, and substance-dependence or self-harm concerns disclosed during the conversation.

23. Plaintiff alleges that a recording exists of a conversation in which Killian directly communicated personal information to Defendant and gave Plaintiff permission to remain present. Plaintiff intends to preserve and authenticate the original recording and rely on it, to the extent admissible, to establish what Defendant personally heard and knew.

24. Plaintiff further alleges that Defendant's February 16, 2023 affidavit memorialized Defendant's firsthand encounter with Killian. In that affidavit, Defendant stated that she saw Killian, that Killian confirmed she was trying to recover from her father's abuse, that Killian discussed severe PCOS pain and heavy Adderall use, and that Defendant personally counseled Killian concerning reducing or ceasing Adderall and seeking care.

25. Plaintiff alleges that she repeatedly told Defendant that she was severely distressed, disabled or otherwise vulnerable, and being harmed by escalating family circumstances, and that she requested help, intervention, referrals, or appropriate protection for herself and her children.

26. Plaintiff further alleges that Defendant's own February 16, 2023 affidavit states that Defendant had verified recordings of Plaintiff's husband and children abusing Plaintiff; characterized the household circumstances as dangerous to the health of Plaintiff and her children; stated that Plaintiff's youngest son was on drugs and that Plaintiff wanted him removed from the home for independent evaluation, therapy, and school; and stated that Plaintiff and her children would need extensive therapy and intervention. Plaintiff alleges these statements are admissions bearing directly on Defendant's actual knowledge, foreseeability, and the reasonableness of Plaintiff's reliance.

27. Plaintiff further alleges that Defendant knew of Plaintiff's serious dental infection and significant physical effects. Plaintiff does not allege that Defendant caused the underlying dental treatment or any alleged dental malpractice; this knowledge is alleged to show the extent of Plaintiff's vulnerability and the foreseeability of harm from withdrawing promised assistance.

28. Defendant also allegedly contacted or communicated with a Baker Act facility in an effort to assist Plaintiff in obtaining release. Plaintiff alleges this direct involvement further demonstrates Defendant's knowledge of Plaintiff's circumstances and Plaintiff's reliance on Defendant.

29. Plaintiff alleges that Defendant agreed to participate in a family intervention. Plaintiff relied on Defendant's promised participation because Defendant had accumulated extensive knowledge of the household and had communicated with family members.

30. Defendant did not appear for the intervention. Plaintiff alleges that Defendant later communicated, in substance, that she had fallen asleep and missed it. Plaintiff will rely on the contemporaneous email or message to establish the undertaking and nonappearance.

31. On February 16, 2023, Defendant executed a sworn affidavit through remote online notarization. The affidavit concerned Plaintiff's mental and emotional stability, parental fitness, conduct, and commitment to her family. Plaintiff alleges that the affidavit bears Defendant's electronic signature and is supported by remote-online-notarial records.

32. Plaintiff thereafter relied on the affidavit as evidence in family-court-related disputes and proceedings concerning Plaintiff's credibility and parental fitness.

33. Plaintiff alleges that, in approximately August 2024 in Palm Beach County, Scott confronted Defendant regarding the February 16, 2023 affidavit and threatened Defendant with legal action based on an asserted HIPAA violation because the affidavit referred to Killian and information concerning Killian. Plaintiff alleges Scott used that asserted HIPAA theory as pressure against Defendant and, in substance, communicated that Defendant would face legal consequences if she acknowledged that she had written and signed the affidavit.

34. Plaintiff alleges that after Scott's asserted HIPAA threat, Defendant told Scott, in substance, that she did not write or sign the February 16, 2023 affidavit. Plaintiff alleges the timing and sequence support an inference that the threatened legal action motivated or contributed to Defendant's repudiation of a document she had actually executed. Plaintiff does not ask the Court at the pleading stage to decide the merits of any hypothetical HIPAA claim; the allegation is pleaded to explain motive, pressure, and sequence.

35. Plaintiff alleges that the denial was false and directly contradicted the remote-online-notarization evidence. After speaking with Defendant, Scott accused Plaintiff of fraud, forgery, and deceit and used Defendant's alleged denial to attack Plaintiff's credibility.

36. Following these events, Plaintiff alleges that Defendant ceased meaningful communication and withdrew from the parties' relationship without reasonably completing or transitioning the nonmedical assistance Defendant had undertaken, including the promised intervention and referral-related assistance.

37. Plaintiff characterizes this conduct as an abrupt withdrawal from specifically undertaken nonmedical assistance after years of reliance. Plaintiff does not in this Complaint ask the Court to decide whether termination of medical treatment violated a professional medical standard of care.

38. At or about the time of the termination, Plaintiff allegedly owed Defendant approximately $1,400. Plaintiff attempted in good faith to address the balance, including asking Scott to pay or assist and presenting or proposing through Sotero Lopez a lien or other security/payment arrangement intended to assure Defendant that the balance would be satisfied.

39. Plaintiff does not allege that Defendant was legally required to accept the lien or proposed security. Plaintiff alleges those efforts to show that the outstanding balance was being addressed when Defendant allegedly terminated the relationship and/or conditioned records access on payment.

40. The Social Security Administration later requested Plaintiff's records in connection with Plaintiff's disability claim pursuant to Plaintiff's authorization. Plaintiff alleges Defendant did not timely provide the requested records and told Plaintiff, in substance, that the records would be provided only after the outstanding balance was paid.

41. Plaintiff separately requested her own records or medical notes and alleges she received the same or substantially similar response: payment first, records afterward.

42. Florida Statutes § 456.057(6), to the extent applicable to the records at issue, requires a licensed health care practitioner who examines or treats a person to furnish requested reports and records in a timely manner and states that furnishing the specified report or copies shall not be conditioned upon payment of a fee for services rendered. Plaintiff alleges Defendant withheld or delayed the requested records because of the outstanding treatment balance. Plaintiff relies on § 456.057 as a statutory standard and basis for records-related equitable relief, not as an assertion of a private damages remedy broader than Florida law permits.

43. Florida Statutes § 39.201 imposes reporting obligations when a person knows or has reasonable cause to suspect child abuse, abandonment, or neglect within the statute. Florida Statutes § 415.1034 imposes reporting obligations concerning known or reasonably suspected abuse, neglect, or exploitation of a statutorily defined vulnerable adult and includes nurses and other health professionals among specified mandatory reporters.

44. Plaintiff pleads §§ 39.201 and 415.1034 as relevant statutory standards only if their factual predicates are proven. Plaintiff does not allege that either statute automatically creates a private damages action for every failure to report.

45. Plaintiff alleges that emails, texts, recordings, notarial records, SSA correspondence, payment communications, and witness testimony will establish the specific information Defendant received, the assistance Defendant undertook, Plaintiff's reliance, the alleged false repudiation, the alleged records withholding, and the resulting harm.

## IV. CAUSATION AND PARTICULARIZED HARM

46. Plaintiff alleges that Defendant's advice not to call DCF had a concrete reliance consequence: Plaintiff did not contact DCF at that time and instead relied on Defendant's promised intervention, guidance, and anticipated assistance. Plaintiff alleges that this reliance delayed or narrowed her opportunity to pursue other family-support, youth-service, educational, social-service, or protective resources during the period when she was actively seeking outside help.

47. Plaintiff alleges that Defendant's failure to attend the promised intervention deprived Plaintiff and her family of the participation Defendant had specifically agreed to provide after acquiring extensive firsthand knowledge of the household. Plaintiff alleges that, because she expected Defendant to participate, she did not have the benefit of arranging a substitute professional or equivalent resource in advance and that the missed undertaking caused additional delay, distress, and loss of an opportunity for timely intervention.

48. Plaintiff alleges that Defendant's later repudiation of the February 16, 2023 affidavit caused a distinct reputational and litigation-related injury because Scott, after speaking with Defendant, accused Plaintiff of fraud, forgery, and deceit. Plaintiff alleges those accusations directly challenged the authenticity of evidence she had relied upon and forced her to defend her credibility and the affidavit's authenticity in ongoing family-related disputes. Plaintiff will identify the particular filings, messages, transcripts, hearings, and related expenses through exhibits and discovery to the extent they are available and admissible.

49. Plaintiff alleges that Defendant's withdrawal after years of reliance caused practical harm by leaving Plaintiff to locate replacement assistance without the benefit of the promised intervention, referral support, or an orderly completion of Defendant's nonmedical undertakings. Plaintiff alleges resulting expenditures and losses include costs reasonably incurred to seek

replacement assistance, obtain records, communicate with agencies and courts, and address the consequences of Defendant's withdrawal, with exact amounts to be established through receipts, account records, and other admissible proof.

50. Plaintiff alleges that the records withholding caused a distinct records-access injury. During the period of nonproduction, Plaintiff could not ensure that SSA possessed Defendant's records for consideration in Plaintiff's disability matter and could not readily transmit the same records to replacement providers or other authorized recipients. Plaintiff alleges the delay required additional requests, correspondence, time, expense, and effort and impaired the completeness and timeliness of her documentary presentation.

51. Plaintiff alleges out-of-pocket losses associated with attempting to obtain records, secure replacement assistance, respond to the affidavit-authenticity controversy, communicate with relevant agencies or courts, and address the consequences of Defendant's alleged withdrawal. Plaintiff will prove only losses supported by admissible evidence and will not seek speculative amounts. Exact amounts are presently subject to compilation from receipts, account statements, SSA correspondence, court records, and other records.

52. Plaintiff alleges severe emotional distress, humiliation, anxiety, and exacerbation of trauma following the alleged course of conduct. Plaintiff will rely on contemporaneous communications, medical or counseling records where admissible, witness testimony, and other competent evidence to distinguish distress allegedly caused or aggravated by Defendant's conduct from distress attributable to the preexisting family conflict.

53. Plaintiff does not allege damages merely because Defendant failed to solve Plaintiff's family problems. Plaintiff seeks recovery only for injuries legally and proximately attributable to Defendant's own alleged representations, undertakings, omissions after reliance, withdrawal from those undertakings, records withholding, and repudiation of the affidavit. Plaintiff recognizes that causation must be proven and alleges that the documentary chronology described above will permit the factfinder to distinguish Defendant-related injury from independent harm caused by Scott or other third parties.

54. Each Count below states one cause of action, identifies the specific factual allegations supporting that Count, and does not adopt preceding Counts. This structure is intended to provide fair notice of the factual and legal basis for each claim and to avoid the shotgun-pleading defects

identified in Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

## V. CAUSES OF ACTION

### COUNT I - BREACH OF FIDUCIARY AND CONFIDENTIAL RELATIONSHIP

55. For this Count only, Plaintiff incorporates paragraphs 5, 13, 14, 15, 18, 19, 20, 25, 26, 29, 30, 31, 33, 34, 35, 36, 46, 47, 48, 49, 52, and 53. Those paragraphs concern the confidential relationship, Defendant's accepted nonmedical undertakings, the affidavit and alleged repudiation, Plaintiff's reliance, and the resulting non-records harms. Count III's records-withholding transaction and all other Counts are expressly excluded.

56. Florida recognizes that a fiduciary relationship may arise where one person is under a duty to act for or give advice for the benefit of another on matters within the scope of the relationship. Gracey v. Eaker, 837 So. 2d 348, 353-54 (Fla. 2002); Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002).

57. The Florida Supreme Court has emphasized that whether an implied fiduciary relationship exists depends on the specific factual situation and the scope of trust accepted by the alleged fiduciary. See Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002); Gracey v. Eaker, 837 So. 2d 348, 353-54 (Fla. 2002). Plaintiff therefore pleads the duty narrowly and only within the matters Defendant allegedly accepted or undertook.

58. Plaintiff alleges that years of confidential dealings, Defendant's receipt of highly sensitive family and health information, Defendant's direct involvement with Plaintiff and family members, and Defendant's express undertakings created a relationship of trust and confidence. The fiduciary duty alleged in this Count is limited to matters Defendant actually accepted or undertook within that relationship: protecting confidences entrusted to her; acting honestly and in good faith when giving guidance she undertook to provide concerning family-safety resources and intervention; and truthfully acknowledging her own execution of the February 16, 2023 affidavit. Plaintiff does not allege that Defendant became a general guardian of Plaintiff or her children, guaranteed a particular outcome, or owed a fiduciary duty as to every aspect of Plaintiff's life. The separate records-withholding transaction is pleaded only in Count III.

59. Plaintiff alleges Defendant breached duties arising within that relationship by repudiating an affidavit Defendant had executed after Plaintiff relied on it; discouraging DCF contact while not meaningfully redirecting Plaintiff to another resource after undertaking to

advise her; failing to follow through on the promised intervention; and abruptly withdrawing from the specifically undertaken nonmedical assistance after Plaintiff relied on it. The records-withholding transaction is pleaded separately in Count III to keep the causes of action distinct.

60. Plaintiff alleges these breaches directly and proximately caused the particularized harms alleged in the causation section, including reputational injury, emotional distress, loss or delay of protective opportunities, practical transition costs, litigation-related prejudice to the extent legally recoverable, and out-of-pocket losses attributable to the non-records conduct pleaded in Count I.

61. Plaintiff seeks compensatory damages and such other relief as is legally available on this Count, excluding the records-production remedy separately requested in connection with Count III.

**COUNT II - NEGLIGENT VOLUNTARY UNDERTAKING AND DETRIMENTAL RELIANCE**

62. For this Count only, Plaintiff incorporates paragraphs 12, 13, 18, 19, 20, 22, 23, 24, 25, 26, 28, 29, 30, 36, 46, 47, 49, and 53. Those paragraphs concern Defendant's voluntary protective undertakings, Plaintiff's reliance, Defendant's alleged failure to complete or reasonably end those undertakings, and the resulting harm. No other Count is incorporated.

63. Florida recognizes the voluntary-undertaking doctrine: one who undertakes to render services to another may be liable for failure to exercise reasonable care when the undertaking increases the risk of harm or when the other person relies on the undertaking. Wallace v. Dean, 3 So. 3d 1035, 1047-51 (Fla. 2009); Union Park Mem'l Chapel v. Hutt, 670 So. 2d 64, 66-67 (Fla. 1996). Plaintiff invokes that doctrine as the legal basis for the failure-to-protect theory pleaded in this Count.

64. Plaintiff alleges Defendant voluntarily undertook specific nonmedical assistance for Plaintiff and her children, including advising Plaintiff whether to contact DCF or another protective resource, discussing Plaintiff's minor son's household and educational crisis, personally meeting Killian and receiving direct disclosures from her, communicating with a Baker Act facility on Plaintiff's behalf, and agreeing to participate in a family intervention. Plaintiff refers to these facts as the factual 'failure-to-protect' theory, while the legal cause of action asserted in this Count is negligent voluntary undertaking and detrimental reliance.

65. Plaintiff alleges she reasonably relied on Defendant's guidance and undertakings because Defendant had become a trusted professional confidante with extensive knowledge of Plaintiff's disability or vulnerability, household crisis, children, and safety concerns. Plaintiff alleges that reliance included not calling DCF at the time Defendant advised against it and awaiting Defendant's promised intervention.

66. Plaintiff alleges Defendant failed to exercise reasonable care in carrying out or ending those undertakings, including by allegedly discouraging DCF contact without a meaningful alternative referral, failing to appear for the intervention after agreeing to participate, and withdrawing despite knowledge that Plaintiff was seeking help for herself and her family.

67. Plaintiff alleges that the reliance placed her in a worse position because she delayed or narrowed pursuit of other assistance while awaiting Defendant's promised involvement and following Defendant's guidance. Plaintiff alleges the resulting harm includes loss or delay of alternative intervention opportunities, additional effort and expense to seek later assistance, and emotional distress attributable to the failed undertaking.

68. This Count is not based on patient abandonment, diagnosis, treatment selection, dosage, medication management, or any other medical standard of care. It is based solely on Defendant's alleged voluntary nonmedical undertakings, protective guidance, failure to follow through, and Plaintiff's detrimental reliance on those undertakings.

**COUNT III - BREACH OF FIDUCIARY DUTY BASED ON RECORDS WITHHOLDING**

69. For this Count only, Plaintiff incorporates paragraphs 5, 13, 38, 39, 40, 41, 42, 50, 51, and 53. Those paragraphs concern the confidential relationship, the outstanding balance, the SSA and Plaintiff records requests, the alleged conditioning or delay of records access, and the resulting records-related harm. No other Count is incorporated.

70. Plaintiff and SSA, acting pursuant to Plaintiff's authorization, requested records from Defendant. Plaintiff alleges Defendant refused or delayed furnishing covered records and stated, in substance, that records would not be released until Plaintiff paid the outstanding balance.

71. Section 456.057(6), Florida Statutes, provides, to the extent applicable to the records at issue, that a licensed health care practitioner who examines or treats a person shall furnish requested reports and records in a timely manner and that furnishing the specified report or copies shall not be conditioned on payment of a fee for services rendered.

72. Plaintiff does not plead § 456.057 as creating a standalone private damages remedy and does not contend that Gracey v. Eaker automatically converts every statutory records dispute into a fiduciary tort. Instead, Plaintiff alleges a common-law fiduciary breach based on the particular relationship pleaded in Count I and Defendant's alleged use of records access within that relationship. Section 456.057(6) is pleaded as corroborating statutory context for the records-access obligation and as support for narrowly tailored declaratory or injunctive relief to the extent such relief is legally available.

73. Plaintiff alleges the withholding or delay caused actual harm because, during the period of nonproduction, she could not ensure that SSA had Defendant's records for consideration, could not readily provide those records to replacement providers or other authorized recipients, and was required to make additional efforts to obtain records and document her history. Plaintiff seeks only damages and equitable relief that can be causally tied to the delay and supported by admissible evidence.

74. Plaintiff seeks compensatory relief only to the extent legally recoverable on this fiduciary-duty theory. Plaintiff separately requests in the Prayer for Relief a narrowly tailored order requiring Defendant to furnish records that Defendant possesses or controls and that applicable Florida law requires to be furnished.

**COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

75. For this Count only, Plaintiff incorporates paragraphs 5, 13, 25, 29, 30, 31, 34, 35, 36, 40, 41, 48, 50, and 52. Those paragraphs concern Defendant's knowledge of Plaintiff's vulnerability, the promised intervention, affidavit repudiation, withdrawal from undertaken nonmedical assistance, records withholding, and the alleged severe emotional consequences. No other Count is incorporated.

76. Florida recognizes intentional infliction of emotional distress where the defendant intentionally or recklessly engages in conduct so extreme and outrageous as to go beyond all possible bounds of decency, the conduct causes emotional distress, and the distress is severe. Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985).

77. Plaintiff alleges Defendant knew of Plaintiff's severe vulnerability and escalating family crisis and nevertheless engaged in an alleged course of conduct that included repudiating her own sworn notarized affidavit after Plaintiff had relied on it, failing to follow through on a family intervention Defendant had specifically undertaken, abruptly withdrawing from the

nonmedical assistance undertaken after years of reliance, and allegedly conditioning or delaying access to covered records while Plaintiff was pursuing disability-related documentation. The recorded statements concerning judges and the court system are not pleaded as independently outrageous conduct and are offered only as relationship and reliance context.

78. Plaintiff alleges the conduct, considered cumulatively and in context, was intentional or reckless and sufficiently extreme and outrageous to satisfy Florida law.

79. Plaintiff alleges severe emotional distress, humiliation, anxiety, exacerbation of trauma symptoms, and emotional destabilization directly caused or aggravated by the alleged course of conduct. Plaintiff will prove severity and causation through competent evidence and does not rely merely on conclusory characterization.

80. Plaintiff recognizes that the outrageousness threshold is demanding and pleads this Count in the alternative to the extent the facts proven satisfy McCarson.

**COUNT V - DECLARATORY JUDGMENT REGARDING FEBRUARY 16, 2023 AFFIDAVIT**

81. For this Count only, Plaintiff incorporates paragraphs 31, 32, 33, 34, 35, and 48. Those paragraphs concern the February 16, 2023 affidavit, Scott's asserted HIPAA-related threat, Defendant's alleged denial of authorship/signature, the resulting fraud-and-forgery accusations, and the continuing credibility dispute. No unrelated allegations or other Counts are incorporated.

82. An actual controversy exists concerning whether Defendant authored and executed the February 16, 2023 affidavit. Plaintiff alleges Defendant executed the affidavit under remote online notarization but later denied authorship or signature to Scott.

83. The controversy is concrete and continuing, not merely a request to declare a past historical fact. Plaintiff alleges Defendant has never issued a written correction or retraction of the alleged denial; Plaintiff continues to maintain and rely on the affidavit as genuine; and Scott's fraud-and-forgery accusations arising from Defendant's denial remain unresolved in ongoing family-related legal disputes affecting Plaintiff's credibility. Plaintiff therefore alleges present adverse legal interests concerning whether the affidavit is authentic and attributable to Defendant, and alleges that a declaration would resolve an existing dispute rather than provide an advisory opinion. See Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).

84. Consistent with Article III and 28 U.S.C. § 2201, Plaintiff alleges a substantial continuing controversy between adverse parties that is real and immediate rather than conjectural or hypothetical. Plaintiff will support the continuing nature of the dispute with the current family-court record, communications, or other admissible evidence showing that authenticity remains contested.

85. Under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, Plaintiff requests a declaration, based on the affidavit, electronic signature evidence, notarial record, and other admissible evidence, determining whether Defendant authored and executed the February 16, 2023 affidavit.

86. Plaintiff seeks only a declaration of the parties' rights and historical fact necessary to resolve the present controversy; she does not ask this Court to review, vacate, or supervise a state-court judgment.

## VI. EQUITABLE REMEDIES REQUESTED

87. The following equitable requests are remedies, not additional causes of action. Plaintiff requests narrowly tailored relief addressing any proven continuing injury, including production of records to which she is presently entitled and declaratory relief regarding the affidavit as pleaded in Count V.

88. Plaintiff does not seek an order compelling Defendant to give particular testimony in another court, controlling future truthful testimony, or directing a state court how to decide any pending family-law matter.

89. Any permanent injunctive relief should issue only upon proof of an actual legal violation, irreparable injury for which legal remedies are inadequate, a balance of hardships favoring relief, and consistency with the public interest. Plaintiff seeks relief no broader than necessary to remedy a proven continuing records-access or related equitable injury.

## VII. DAMAGES

90. Plaintiff seeks compensatory damages only for injuries proven with competent evidence and legally attributable to Defendant's conduct. Claimed categories include: (a) documented expenses incurred to obtain records; (b) documented expenses reasonably incurred to secure replacement assistance or respond to Defendant's withdrawal from undertaken assistance; (c) documented litigation-related or administrative expenses caused by the affidavit-authenticity controversy to the extent recoverable; (d) disability-benefit-related delay or

impairment only to the extent supported by SSA records and competent causation proof; (e) reputational injury where legally recoverable; and (f) severe emotional distress proven by competent evidence.

91. Plaintiff alleges in good faith that the amount in controversy exceeds $75,000, exclusive of interest and costs. The exact amount of compensatory damages will be established through discovery and admissible evidence, including receipts, account statements, SSA correspondence, court records, communications, witness testimony, and other competent proof. Plaintiff does not ask the Court to accept speculative or unsupported dollar amounts.

92. Plaintiff also seeks punitive damages on any intentional-tort claim for which the evidence satisfies Florida's substantive punitive-damages standard, subject to applicable federal pleading and proof requirements.

## VIII. PRAYER FOR RELIEF

A. Enter judgment in Plaintiff's favor on each claim proven;

B. Award compensatory damages in an amount established by admissible evidence;

C. Award punitive damages only on any claim and factual showing for which such damages are legally available;

D. Enter a declaratory judgment determining whether Defendant authored and executed the February 16, 2023 remote-online-notarized affidavit;

E. Order Defendant to furnish records to the extent Defendant possesses or controls records that applicable Florida law requires to be furnished to Plaintiff or an authorized recipient;

F. Grant narrowly tailored prospective equitable relief necessary to remedy any proven continuing injury;

G. Award taxable costs as permitted by 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and other applicable law; and

H. Grant such other relief to which Plaintiff is entitled under Fed. R. Civ. P. 54(c) and other applicable law.

## IX. JURY DEMAND

93. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues triable by jury.

## X. PRESERVATION OF SEPARATE CHAPTER 766 MATTERS

94. Plaintiff states that she recently served presuit notice concerning matters that may separately implicate Florida Chapter 766. Plaintiff does not seek adjudication in this Complaint of any separate medical-negligence theory requiring proof that Defendant breached the prevailing professional medical standard of care.

95. Plaintiff reserves any separate Chapter 766 theory subject to the applicable presuit process, statutes of limitation and repose, and the Federal Rules of Civil Procedure. Nothing in this section is intended to create jurisdiction over an unripe claim or to shorten, waive, or enlarge any statutory presuit requirement.

## XI. EVIDENTIARY PRESERVATION AND DAMAGES PROOF

96. Plaintiff will preserve and, as appropriate, authenticate the original electronic files and metadata for recordings, emails, text messages, notarial records, SSA correspondence, payment communications, and other digital evidence. Plaintiff will also preserve receipts, account records, court filings, transcripts, agency correspondence, and other materials necessary to quantify claimed damages and establish a chronological causal connection between Defendant's alleged conduct and each category of injury.

## XII. RULE 11 CERTIFICATION AND VERIFICATION

Plaintiff presents this pleading in good faith under Fed. R. Civ. P. 11(b). Factual contentions are based on personal knowledge or identified evidence, or are alleged on information and belief where evidentiary support is expected after a reasonable opportunity for discovery.

I, Melanie M. Beres, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and that the factual statements stated on my personal knowledge are true and correct, and that allegations stated on information and belief are believed to be true after reasonable inquiry.

Executed on: ____________________, 2026

/s/ Melanie M. Beres

MELANIE M. BERES, Plaintiff, Pro Se
c/o 9418 North Green Bay Road, Apt. 328

Brown Deer, Wisconsin 53209
melanieberes@protonmail.com
97. (414) 916-8755

**EXHIBIT INDEX**

Exhibit A - February 16, 2023 affidavit, including Defendant's statements concerning her Child Protection Team membership, pediatric-trauma background, direct meeting with Killian, verified recordings of alleged abuse, concerns involving Plaintiff's youngest son, and the need for extensive therapy/intervention; together with the remote-online-notarization record/certificate.

Exhibit B - Communications, testimony, or other evidence concerning Scott's asserted HIPAA threat and Defendant's later denial or repudiation of the affidavit.

Exhibit C - Original recording and any authenticated transcript of Defendant's meeting/conversation with Killian.

Exhibit D - Communications concerning the intervention, including Defendant's agreement to participate and message concerning her nonappearance.

Exhibit E - Communications concerning DCF, family intervention, Ches, and Plaintiff's requests for assistance or referrals.

Exhibit F - SSA request for records and Plaintiff's authorization.

Exhibit G - Communications concerning Defendant's refusal or delay in furnishing records and the outstanding balance.

Exhibit H - Communications or documents concerning the approximately $1,400 balance, Scott's proposed payment, and the proposed lien/security arrangement.

Exhibit I - Evidence of Defendant's Baker Act facility communication, if available.

Exhibit J - Damages and causation materials, including receipts, account statements, SSA correspondence and determinations, court filings or transcripts reflecting affidavit-related accusations, replacement-assistance expenses, and other authenticated records supporting each claimed loss.

Exhibit K - Original recording containing Defendant's statements concerning judges and the court system, preserved in native format with metadata and any authenticated transcript, offered only as evidence of the scope of the confidential relationship, Defendant's influence, and Plaintiff's reliance, subject to authentication and admissibility.

Melanie M. Beres
2717 18th Street
Kenosha, WI. 53140

F

$8.69 US POSTAGE
FIRST-CLASS IMI
Sep 16 2026
Mailed from ZIP 53140
8 OZ FIRST-CLASS MAIL FLATS RATE
ZONE 8
20178485
063S0016792599
endicia

FIRST-CLASS MAIL

Melanie Beres
2717 18TH ST STE 200
KENOSHA WI 53140

C028

Shipped using PostalMate
Pkg:13712

SHIP TO: US District Court Southern District of FL
ATTN Clerk of Court
701 CLEMATIS ST RM 202
WEST PALM BCH FL 33401-5113

USPS CERTIFIED MAIL

9407 1118 9956 1395 4361 15

Atten: Clerk of Court
United States District Court
Southern District of Florida
701 Clematis Street, Room 202
West Palm Beach, FL 33401

INSPECTED